UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDNA E. PARKER,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. CV 08-4351-JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On July 1, 2008, Edna E. Parker ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of her application for Disability Insurance Benefits. On July 30, 2008, Michael J. Astrue, Commissioner of Social Security ("defendant"), filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. On July 31, 2008, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on December 29, 2008, defendant filed an Answer to the Complaint. On April 24, 2009, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On September 26, 2005, plaintiff filed an application for Disability Insurance Benefits alleging a disability onset date of September 1, 2004. (See Administrative Record ["AR"] at 19). The Commissioner denied plaintiff's application for benefits. (AR at 43-47). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 41, 42).

On April 11, 2007, the ALJ conducted a hearing in West Los Angeles, California. (See AR at 301-23). Plaintiff appeared at the hearing with counsel and testified. (AR at 305-17). Lynne Tracey, a vocational expert, also testified at the hearing. (AR at 317-21; see AR at 37-38). On September 28, 2007, the ALJ issued a decision denying benefits to plaintiff. (AR at 19-28). The ALJ determined that plaintiff had the following severe impairments: status post right ulnar nerve release at the elbow in 1999, status post right median nerve release at the elbow in 2000, status post right epicondylectomy in 2001, history of cervical spine disc degeneration, and marked narrowing at the L4-5 interspace. (AR at 21). The ALJ found that plaintiff's conditions did not meet or equal any of the impairments contained in the Listing of Impairments (see 20 C.F.R. Part 404, Subpart P, Appendix 1). The ALJ determined that plaintiff retained the residual functional capacity to perform a limited range of light work.[1] (AR at 21-27). The ALJ found that plaintiff was capable of performing her past relevant work as a working supervisor. (AR at 27-28). Accordingly, the ALJ concluded that plaintiff was not disabled at any time from September 1, 2004, plaintiff's alleged disability onset date, through the date of the decision. (AR at 28). The Appeals Council denied plaintiff's timely request for review of the ALJ's decision. (AR at 4-6).

Thereafter, plaintiff appealed to the United States District Court.

///

///

---

[1] Specifically, the ALJ found that plaintiff could lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk up to 6 hours out of an 8-hour workday, sit up to 6 hours out of an 8-hour workday, and that plaintiff is precluded from forceful or repetitive pushing, pulling, torquing, or twisting with the upper extremities. (AR at 21).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1. The ALJ failed to properly evaluate plaintiff's credibility.

2. The ALJ failed to give proper weight to the opinion of Dr. Nagelberg, plaintiff's treating physician.

3. The ALJ failed to make sufficient findings regarding plaintiff's past relevant work as a working supervisor.

**STANDARD OF REVIEW**

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**DISCUSSION**

**A.    The Sequential Evaluation**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20

1. C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 141 (1987). Second, the ALJ must determine whether the claimant has a severe impairment. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantially gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times, the burden is on the claimant to establish his or her entitlement to disability insurance benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

**B.    Step Four - Plaintiff's Past Relevant Work**

Plaintiff argues that the ALJ erred in her determination that plaintiff could perform her past relevant work. (Joint Stipulation at 23-25). Plaintiff alleges that the ALJ's reliance on the vocational expert's testimony was improper because the vocational expert's testimony was unclear regarding plaintiff's ability to stand and sit, and was produced in response to an incomplete hypothetical that did not contain all of plaintiff's assessed limitations.

At step-four of the sequential evaluation process, a claimant must establish that his or her severe impairment or impairments prevent him or her from performing his or her past

relevant work. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). The regulations explain the step-four evaluation: "If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant has the burden of showing that he or she can no longer perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e); Clem v. Sullivan, 894 F.2d 328, 331-32 (9th Cir. 1990). Although the burden of proof lies with the claimant, the ALJ still has a duty to make the requisite factual findings to support his or her conclusion. Pinto, 249 F.3d at 844-45.

In order to determine whether a claimant has the residual functional capacity to perform his or her past relevant work, the ALJ must evaluate the work demands of the past relevant work and compare them to the claimant's present capacity. Villa v. Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986). Social Security Ruling ("SSR")[2] 82-62 states that a determination that a claimant has the capacity to perform a past relevant job must contain among the findings the following specific findings of fact: (1) a finding of fact as to the claimant's residual functional capacity; (2) a finding of fact as to the physical and mental demands of the past job or occupation; and (3) a finding of fact that the claimant's residual functional capacity permits him or her to return to the past job or occupation. See SSR 82-62; see also Pinto, 249 F.3d at 844-45.

A finding that a claimant is able to return to his or her past relevant work must be based on adequate documentation and a careful appraisal. Dealmeida v. Bowen, 699 F. Supp. 806, 807 (N.D. Cal. 1988) ("Without the proper foundation as to what plaintiff's past relevant work entailed, the ALJ's subsequent determination that plaintiff retained the residual functional

---

[2] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991). Although they do not have the force of law, they are nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1  capacity to perform that job is not supported by substantial evidence."). This determination
2  requires a careful appraisal of the claimant's statements, the medical evidence, and, in some
3  cases, corroborative information such as the Dictionary of Occupational Titles ("DOT")[3]. SSR
4  82-62. SSR 82-62 further states that adequate documentation must be obtained to support the
5  decision, including "factual information about those work demands which have a bearing on the
6  medically established limitations." Thus, "[d]etailed information about . . . mental demands and
7  other job requirements must be obtained as appropriate." SSR 82-62; see Sivilay v. Apfel, 143
8  F.3d 1298, 1299 (9th Cir. 1998) (remanding to ALJ to "investigate fully the demands of the
9  applicant's past work and compare them to the applicant's residual mental and physical
10 capabilities"). Any determination regarding a claimant's ability to perform past work "must be
11 developed and explained fully in the disability decision" and "every effort must be made to
12 secure evidence that resolves the issue as clearly and explicitly as circumstances permit." SSR
13 82-62.

    At the hearing, plaintiff testified regarding the requirements of her past work as a
supervisor. She testified that she "used a computer a lot" and stopped working because she
was unable to continue. (AR at 306). Plaintiff testified that she could not return to her past work
because of her pain and her inability to carry files, walk from room to room, and interact with
others. (AR at 316). When asked why her pain prevented her from working as a supervisor,
plaintiff testified that as a supervisor she had to sit at a computer and key in information, and
supervise and review employees and was at a computer terminal at least six hours a day. She
also testified that "there were times I wouldn't even take a break[.]" (AR at 311). Plaintiff
testified that the remainder of her time on the job was spent in meetings, pulling records, and
walking between units. (Id.).

---

[3] The Social Security Administration has taken administrative notice of the Department of Labor's Dictionary of Occupational Titles, 20 C.F.R. § 416.966(d)(1); Massachi v. Astrue, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007), which describes the duties and physical requirements of the numerous occupations that it chronicles. Dictionary of Occupational Titles, Fourth Edition, 1991, available at http://www.oalj.dol.gov/libdot.htm; see Pinto, 249 F.3d at 845-46 ("[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles.").

The vocational expert testified that she did not agree with the DOT's description of the job requirements for a working supervisor; she testified that the job requires frequent reaching, handling, and fingering, rather than just occasional reaching, handling, and fingering, per the DOT. (AR at 317). With regard to the sitting and standing requirements of plaintiff's past relevant work, the vocational expert testified that supervisors usually have flexibility "to get up and down" and explained that a standing and walking capacity of 15 to 20 minutes would not have an impact on supervisory work:

> . . . 15 to 20 minutes of walking at a time is a pretty fair distance. As a supervisor, one could, you know, even in observing the work of, of her supervisees, she could walk to someone's desk, observe what they were doing, sit down, then walk to another place if she exceeded the 15 to 20 minutes. If she needed to change positions, she could do that as a supervisor.

(AR at 321; see AR at 318). Thus, the vocational expert found that a limitation of no prolonged sitting or standing would not preclude plaintiff from performing her past relevant work. (AR at 318).

The record also contains an undated Disability Report in which plaintiff described her past relevant work and states that she sat for seven hours in an eight-hour day, and had to grab or grasp big objects and reach for eight hours a day. (AR at 55). In addition, in a Comprehensive Orthopedic Consultation and Report completed by Steven Nagelberg, M.D., plaintiff's treating physician, dated August 5, 1999, Dr. Nagelberg summarized plaintiff's past relevant work as follows:

> She worked eight hours per day, five days per week. Her work duties entailed supervising 17 employees, preparing reports and work schedules, and entering information into a computer terminal. She does not recollect performing any lifting activities. Also required were repetitive bending, stooping,

7

>squatting, kneeling, twisting, turning, pushing, pulling, gripping, grasping, walking, and standing.

(AR at 273).[4]

In the decision, the ALJ found that plaintiff had the following severe impairments: status post right ulnar nerve release at the elbow in 1999, status post right median nerve release at the elbow in 2000, status post right epicondylectomy in 2001, history of cervical spine disc degeneration, and marked narrowing at the L4-5 interspace. (AR at 21). The ALJ then determined that plaintiff retained the residual functional capacity to perform a limited range of light exertion. (AR at 21-27). Specifically, the ALJ determined:

>[Plaintiff] has the residual functional capacity to: lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; stand and/or walk up to 6 hours out of an 8-hour workday; sit up to 6 hours out of an 8-hour workday; but she cannot perform forceful or repetitive pushing, pulling, torquing, or twisting with the upper extremities.

(AR at 21).

In support of the finding that plaintiff is capable of performing her past relevant work as a working supervisor, the ALJ noted that the vocational expert testified that plaintiff's past relevant work as a working supervisor is classified by the DOT as primarily sedentary exertional-level skilled work.[5] (AR at 27; see AR at 318-19). The ALJ noted that the vocational expert testified that she disagreed with the DOT's description that the job requires only occasional reaching, handling, and fingering and, instead, testified that this job generally requires frequent

---

[4] The Court recognizes that Dr. Nagelberg is not a vocational expert and that the ALJ did not give great weight to Dr. Nagelberg's opinion of plaintiff's "temporary total disability" because it was prepared for workers' compensation purposes and rendered prior to the end of plaintiff's course of surgery. (AR at 25). The Court considers Dr. Nagelberg's description of plaintiff's past relevant inasmuch as it document's plaintiff's description of her past relevant work.

[5] The Court notes that neither the vocational expert nor the ALJ identified the DOT job number for the job "working supervisor" and that the job title "working supervisor" is not listed in the DOT's Alphabetical Index of Occupational Titles.

reaching, handling, and fingering. (AR at 27; see AR at 317). The ALJ went on to note that the vocational expert testified that even with the requirements of frequent reaching, handling, and fingering, plaintiff retained the residual functional capacity to perform her past relevant work. (AR at 27; see AR at 318). The ALJ also noted that the vocational expert testified that plaintiff could perform her past relevant work even if she was precluded from prolonged standing and sitting, or if she were limited to lifting no more than eight pounds. (AR at 27; see AR at 318-21).

As stated above, a determination that a claimant has the capacity to perform a past relevant job must contain specific findings of fact as to (1) the claimant's residual functional capacity; (2) the physical and mental demands of the past job or occupation; and (3) whether claimant's residual functional capacity permits her to return to the past job or occupation. See SSR 82-62. The ALJ has satisfied the first requirement in that she made sufficiently specific findings of fact regarding plaintiff's residual functional capacity. The ALJ, however, failed to make the requisite findings of fact regarding the physical and mental demands of plaintiff's past work as a working supervisor, and whether plaintiff's residual functional capacity permits her to return to her past job as a working supervisor. See SSR 82-62.

The record contains few details of the physical and mental demands of plaintiff's past relevant work as a working supervisor, both as actually performed and generally performed. In the decision, the ALJ stated that she accepted the vocational expert's testimony. The ALJ summarized the vocational expert's testimony at the hearing and concluded that the "objective and subjective evidence supports a finding that [plaintiff] can perform her past relevant work as actually and generally performed."[6] (AR at 27-28). Yet the ALJ made few findings and relied solely on the conclusions of the vocational expert at step four. SSR 82-62 requires that any determination regarding a claimant's ability to perform past work "must be developed and explained fully in the disability decision" and "every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." SSR 82-62, 1982 WL

---

[6] The ALJ also stated that she rejected plaintiff's representative's argument that plaintiff can keyboard no more than 10 minutes at a time and must rest after 20 minutes. (AR at 28).

31386, at *3. The ALJ's conclusory statements are insufficient to satisfy the demands of SSR 82-62. See Nimick, 887 F.2d at 867 (remanding case for failure to comply with SSR 82-62 and stating, "The ALJ's discussion of the demands made of a machine operator lacks the specificity and full development and explanation the Social Security regulations and ruling . . . require.").

Moreover, the ALJ failed to make findings of fact with regard to whether plaintiff's residual functional capacity permits her to return to her past job. The descriptions of plaintiff's past relevant work in the record appear to conflict with the ALJ's determination that plaintiff retained the residual functional capacity to perform her past work as actually performed. The ALJ did not address plaintiff's testimony at the hearing that she could not return to her past work because of her inability to walk from room to room (AR at 316), and that there were times when she sat at the computer terminal for at least six hours a day without a break (AR at 311), or her statement in the Disability Report that she sat for seven hours in an eight hour day (AR at 55). The ALJ did not explain how plaintiff, with an assessed sitting capacity of six hours, could perform her past relevant work as she testified it was actually performed. Nor did the ALJ address the inconsistency between Dr. Nagelberg's description of plaintiff's past relevant work, in which he stated plaintiff's work required repetitive twisting, turning, pushing, and pulling (AR at 273), and the ALJ's assessment that plaintiff could not perform "forceful or repetitive pushing, pulling, torquing, or twisting with the upper extremities." (AR at 21). Although the ALJ may have valid reasons for rejecting the descriptions in the record of plaintiff's past relevant work in favor of the vocational expert's description or the DOT's description, the ALJ failed to make sufficient findings of fact regarding the demands of plaintiff's past job and whether plaintiff's assessed residual functional capacity allowed plaintiff to return to her work.

In addition, pursuant to SSR 00-4p, before relying on a vocational expert's testimony to support a disability determination, an ALJ must do three things. First, at the hearing, the ALJ has an "affirmative responsibility to ask about any possible conflict between [the vocational expert's] evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4; see id. at *2 ("At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."). An

ALJ may not properly rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT. Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("[W]e address the question whether, in light of the requirements of [Social Security Ruling] 00-4p, an ALJ may rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles. We hold than an ALJ may not."). If the ALJ does not ask the vocational expert whether his testimony conflicts with the DOT, the reviewing court cannot determine whether substantial evidence supports the ALJ's findings. Id. at 1153-54 (citing Prochaska v. Barnhart, 454 F.3d 731, 736 (7th Cir. 2006)); see also Travis v. Astrue, 477 F.3d 1037, 1042 (8th Cir. 2007) ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence."). Second, if the vocational expert's testimony appears to conflict with the DOT, the ALJ must "obtain a reasonable explanation for the apparent conflict." SSR 00-4p, 2000 WL 1898704, at *4. Third, if the vocational expert's testimony is not consistent with the information in the DOT, the ALJ must "explain in the determination or decision how he or she resolved the conflict. . . . irrespective of how the conflict was identified." Id.

Here, the ALJ failed to ask the vocational expert if her testimony was consistent with the DOT. The ALJ also failed to solicit or obtain any explanation for the vocational expert's disagreement with the DOT regarding the reaching, handling, and fingering requirements of a working supervisor. (See AR at 317). The ALJ's statement that she "accepts the vocational expert testimony" and finds it consistent with the DOT (see AR at 27) did not satisfy her duty of "explain[ing] in the determination or decision how [s]he . . . resolved the conflict." See SSR 00-4p, 2000 WL 1898704, at *4; Massachi, 486 F.3d at 1154; see also Pinto, 249 F.3d at 846 ("In order for an ALJ to accept vocational expert testimony that contradicts the [DOT], the record must contain 'persuasive evidence to support the deviation.'" (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995))).

///
///

## C. Remand is Required to Remedy Defects in the ALJ's Decision

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

Here, the Court finds remand appropriate. The ALJ failed to make proper findings in support of her conclusion that plaintiff retained the residual functional capacity to perform her past relevant work as a working supervisor. On remand, the ALJ must make specific findings of fact regarding the mental and physical demands of plaintiff's past relevant work as a working supervisor and whether plaintiff retained the residual functional capacity to meet those demands as required by SSR 82-62. Moreover, if the ALJ relies on the testimony of a vocational expert, the ALJ should inquire whether the vocational expert's testimony is consistent with the DOT and resolve any conflict between the vocational expert's testimony and the DOT as directed by SSR 00-4p. If the ALJ determines plaintiff cannot perform her past relevant work, the ALJ must proceed to the fifth step of the sequential evaluation and determine whether plaintiff's impairments prevent her from performing any other substantially gainful activity.[7]

///
///
///
///
///
///

---

[7] In the Joint Stipulation, plaintiff also contends that the ALJ failed to properly evaluate plaintiff's credibility and give proper weight to the opinion of Dr. Nagelberg, plaintiff's treating physician. As explained above, however, the ALJ's error in failing to make sufficient findings at step four constitutes sufficient reason to remand this case. Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments again. In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.

Case 2:08-cv-04351-PJW   Document 20   Filed 05/26/09   Page 13 of 13   Page ID #:86

| | |
|---|---|
| 1 | **ORDER** |
| 2 | The Court, therefore, VACATES the decision of the Commissioner of Social Security |
| 3 | Administration and REMANDS this action for further administrative proceedings consistent with |
| 4 | this Memorandum Opinion and Order. |
| 5 | **LET JUDGMENT BE ENTERED ACCORDINGLY.** |
| 6 | DATED: May 26, 2009 |

                                             /s/-Jennifer T. Lum
                                   JENNIFER T. LUM
                                   UNITED STATES MAGISTRATE JUDGE

13